NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4375
_____

UNITED STATES OF AMERICA

v.

DERRICK GARVIN,
Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Cr. Action No. 2-11-cr-00480-001)
District Judge: Honorable Cynthia M. Rufe
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
November 5, 2013
_____

Before: GREENAWAY, JR., VANASKIE, and ROTH, *Circuit Judges*.

(Opinion Filed: December 17, 2013)

_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge*.

The instant appeal arises from the District Court's denial of Appellant Derrick

1

Garvin's ("Appellant") motion to suppress evidence. Appellant entered a conditional guilty plea to one count of felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Under the terms of the plea, he reserved the right to appeal the District Court's denial of his motion to suppress. This question is now before us. For the reasons discussed below, we will affirm the District Court.

## I. Facts and Procedural History

Because we write primarily for the benefit of the parties, we recount only the facts essential to our discussion.

On April 6, 2011, at approximately 10:25 p.m., Philadelphia Police Officers Michael Minor and Frank Dowd were on patrol in a marked police car when they received a radio call reporting that a black man with a gun, wearing a black hooded sweatshirt ("hoody") and walking a dog, was at the intersection of 56th Street and Greenway Street in front of a Chinese store. The radio flash provided no information about the source of the tip, nor did it indicate that the subject of the flash had committed any crime.

Officers Minor and Dowd arrived at 56th Street and Greenway Street in less than a minute, and did not see anyone. As they turned onto 56th Street, they saw only one man who met the flash description walking south along 56th Street about one-half block away from the intersection provided by the tip. Appellant was the only person walking on that

2

block at the time. Appellant wore a dark gray hoody, black jeans, a red shirt, and black and white sneakers, and was walking with his dog. As the officers watched, a marked police emergency patrol vehicle drove southbound past Appellant and parked at the corner of 56th and Woodland Avenue, the next street south of Greenway. Appellant, who had been walking south, abruptly turned around and began walking north.

Officers Minor and Dowd then stopped their vehicle alongside Appellant. Appellant looked at them and walked up the steps of a residence at 1926 South 56th Street and knocked on the door. The residence belongs to Essie Jackson, who lives alone. Ms. Jackson is familiar with Appellant, as he lives a block from her home, and he had been in her home in the past to visit with her son while her son lived with her. Ms. Jackson could see Appellant at her door, and through the window in the door, heard him say "Open the door." (App. 13) Through the window, Office Minor observed her shake her head "no." (*Id.*) She did not open the door to let Appellant inside.

The officers subsequently emerged from the car onto the sidewalk, and instructed Appellant to come down the stairs. The officers asked Appellant if he had any weapons and he said no. Appellant was informed that Officer Dowd would conduct a frisk search for weapons, and Appellant complied.

Officer Dowd found a handgun while conducting the frisk search around the waistband of Appellant's pants. The gun was later identified as a black semiautomatic .40 caliber Glock 22, loaded with nine rounds of ammunition. Appellant told the officers

3

that he had a permit to carry a concealed weapon. This statement was checked by the police dispatcher and found to be false. At that point, Defendant was arrested, handcuffed, and placed in the back of the patrol car.

Garvin argues that the District Court erred in denying his motion to suppress the gun found during a *Terry* search because the stop and the resultant seizure were not supported by probable cause or reasonable suspicion. Garvin contends that the resultant seizure and search of his person, the evidence seized (the gun), and his subsequent admission to carrying and owning the gun are all tainted by the illegality of the initial stop under the "fruit of the poisonous tree" doctrine, and that the evidence must be suppressed.

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. Our review of the District Court's determination that there was reasonable suspicion to seize Appellant and, thus, that the motion to suppress should be denied, is plenary. *Ornelas v. United States*, 517 U.S. 690, 699 (1996) ("as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal," but factual findings should be reviewed for clear error).

## III. Analysis

4

## A. Reasonable Suspicion

In the absence of a warrant, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (discussing *Terry v. Ohio*, 392 U.S. 1 (1968)). The reasonable suspicion framework first articulated in *Terry v. Ohio* requires less than probable cause, but there must be "at least a minimal level of objective justification for making the stop." *Id.* at 123. In determining whether there was reasonable suspicion, we consider the totality of the circumstances. *See United States v. Cortez*, 449 U.S. 411, 417 (1981); *United States v. Brown*, 448 F.3d 239, 249 (3d Cir. 2006). Among the "pertinent factor[s]" that an officer may consider are whether the area is a high-crime area, a suspect's "nervous, evasive behavior," and flight from police officers. *Wardlow*, 528 U.S. at 124. Reasonable suspicion may be "based on acts capable of innocent explanation." *United States v. Valentine*, 232 F.3d 350, 356 (3d Cir. 2000). The circumstances, however, "must raise a suspicion that the particular individual being stopped is engaged in wrongdoing." *Cortez*, 449 U.S. at 418.

In determining whether there was reasonable suspicion to seize Appellant, we may consider everything that occurred until the moment he was seized. *See Valentine*, 232 F.3d at 358.

## B. The District Court's Decision

The District Court denied Garvin's motion to suppress in a detailed opinion. *United States v. Garvin*, No. 11-480-01, 2012 WL 1970385 (E.D. Pa. May 31, 2012). The District Court found that, because Appellant's gun was concealed in his waistband, the anonymous tip was credible because such "information was not available to any observer but indicated that the informant had personal knowledge that [Appellant] was armed." (App. 17.) Nonetheless, "the tip alone was not sufficient to support an investigatory stop" because "some individuals are legally permitted to carry guns . . . ." (*Id.*) Therefore, reasonable suspicion that an individual is carrying a gun, without more, is not evidence of criminal activity afoot. (*Id.*) The District Court then appropriately proceeded to consider whether the stop was supported by other factors.

The District Court relied on two specific actions that Appellant undertook which Officers Minor and Dowd "reasonably interpreted as evasive." (*Id.*) First, Appellant abruptly changed directions when a marked police vehicle passed him driving southbound and stopped at the corner. Second, when Officers Minor and Dowd pulled up and stopped beside him in a second marked police vehicle, Appellant went up the stairs to a residence – not his own – and sought entry. The District Court acknowledged that neither of the two acts of evasion nor the tip alone would give rise to reasonable suspicion; however, "taken together, along with other factors such as the lateness of the

hour, his oral demand that Essie Jackson open the door, Ms. Jackson's refusal to open the door to admit him to her home, and justifiable inferences the officers made based on their experience and training," gave rise to Officers Minor and Dowd having reasonable suspicion that supported a *Terry* stop of Appellant. (*Id.* at 18.)

Having found that the officers had reasonable suspicion to support a brief investigatory stop, the District Court then found that the officers were authorized to take reasonably necessary steps to protect their personal safety. "Given the content of the flash information they had received, an above-the-clothes pat-down for a gun was warranted." (*Id.* at 19.)

The District Court reasoned that because the *Terry* stop was supported by reasonable suspicion, the gun found during the *Terry* stop and further investigation confirming it was unaccompanied by a permit to carry a concealed weapon provided probable cause to make the arrest. As such, Garvin's fruit of the poisonous tree argument was without merit, and his statements subsequent to the arrest were not suppressed. (*Id.*)

## C. The Officers had Reasonable Suspicion

The officers had reasonable suspicion to stop Garvin and conduct a subsequent over-the-clothes pat-down given the content of the anonymous tip in order to secure their personal safety. The seizure and search were lawful and the District Court correctly denied Garvin's motion to suppress.

Garvin relies on the fact that the tip, being anonymous, did not provide the reasonable suspicion required to make a *Terry* stop, and that the tip did not have sufficient corroboration to elevate it to reasonable suspicion. We disagree. Here, the tip was corroborated by the police officers' personal observations to provide reasonable suspicion for the stop. *See United States v. Nelson*, 284 F.3d 472, 483 (3d Cir. 2002) (officers were able to corroborate details provided in phone tip, so that the totality of the circumstances bolstered the reasonable suspicion necessary to justify the *Terry* stop).[1]

Garvin insists that the other factors considered by the District Court, including the hour and Garvin's decision to turn away from the police also do not provide officers with reasonable suspicion. This misses the mark. The District Court conceded that each individual factor would not give rise to reasonable suspicion, but that all of the factors, when taken together, are sufficient. The District Court observed that the tip, the lateness of the hour, the officers' experience, the abrupt change of direction Appellant made upon seeing a marked police vehicle, and Appellant's attempt to enter someone else's home upon being approached by Officers Minor and Dowd, all gave rise to form the particularized and objective basis for stopping Appellant.

The District Court is correct: while each factor "alone is susceptible to innocent explanation, and some factors are more probative than others, taken together, they

---

[1]*See also United States v. Lawrence*, 327 F. App'x 378, 379 (3d Cir. 2009) (finding that anonymous tip regarding four black males in precise location indicated by caller was corroborated by the defendant's attempt to conceal something as officers approached, and gave rise to a finding of reasonable suspicion).

suffice[] to form a particularized and objective basis for [the stop]." *United States v. Arvizu*, 534 U.S. 266, 267 (2002). Therefore, the totality of the circumstances warranted a finding of reasonable suspicion, which permitted the officers to conduct the investigatory stop.

Further, Garvin was only detained briefly while the officers investigated whether the gun he was carrying was legal or illegal. The arrest only occurred after determining that Garvin did not have a permit to carry a concealed weapon, and was therefore supported by probable cause. The District Court properly denied Garvin's motion to suppress the weapon found during the search, and the subsequent confession made after being read his Miranda rights.

## IV. Conclusion

For the aforementioned reasons, we will affirm the District Court's denial of Appellant's motion to suppress.